STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

FILED

November 4, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JEFFREY J. RIPPLE,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0149** (BOR Appeal No. 2049821)
                           (Claim No. 2009058367)

**ESSROC CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jeffrey J. Ripple, by Lawrence E. Sherman Jr., his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Essroc Corporation, by Maureen Kowalski, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated January 28, 2015, in which the Board affirmed a September 3, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 9, 2013, decision granting Mr. Ripple a 15% permanent partial disability award for his left knee injury. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Ripple worked as a laborer for Essroc Corporation. Dating as far back as 2007, Mr. Ripple had significant non-occupational left knee problems. In May of 2007, John A. Draper, M.D., performed an arthroscopic surgery which revealed a complex tear of the posterior horn of the lateral meniscus. Within two weeks of the procedure, Mr. Ripple contracted a Methicillin-resistant Staphylococcus aureus (MRSA) infection that required an arthroscopic wash and a two to three month course of intravenous antibiotics. After he recovered, Mr. Ripple returned to work.

1

On August 20, 2008, Mr. Ripple reinjured his left knee while stepping off a piece of equipment at work. Soon afterwards, an MRI was taken of Mr. Ripple's left knee which revealed a tear of the medial meniscus. The report noted that the lateral meniscus, anterior cruciate ligament, and posterior cruciate ligament were still intact. The claims administrator held Mr. Ripple's claim compensable, and he received a course of conservative treatment. The conservative treatment, however, did not improve his symptoms, and in the beginning of 2009, Dr. Draper performed another arthroscopic surgery on Mr. Ripple's left knee which included a lateral meniscectomy. The surgery revealed that there was a complex tear of the posterior horn of the lateral meniscus.

The surgery, however, did not alleviate Mr. Ripple's pain. Mr. Ripple returned to work, but in August of 2009, an MRI of the left knee revealed osteoarthritis of the patella femoral joint. Daniel Zimet, M.D., evaluated Mr. Ripple at this time and found that he had 1% whole person impairment related to the arthroscopic procedure authorized under this claim. Mr. Ripple was not granted an award based on Dr. Zimet's recommendation because soon afterwards Dr. Draper requested authorization for a total left knee replacement. X-rays were taken of Mr. Ripple's left knee at this time which revealed spurs along the medial and lateral aspects of the left knee as well as moderate joint space narrowing in both compartments of the knee. Dr. Draper performed the total knee replacement surgery on April 12, 2010. The postoperative notes indicated that there was significant deterioration of the cartilage in all three compartments of his left knee.

Mr. Ripple returned to work after recovering from his knee replacement. However, he continued to have pain in his left knee, and in the beginning of 2011, Dr. Draper performed a revision of his knee replacement to realign the tibial component. Over a year after this surgery, P. Kent Thrush, M.D., evaluated Mr. Ripple. He determined that Mr. Ripple had reached his maximum degree of medical improvement. Dr. Thrush found that he had 30% whole person impairment under the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) because of his total left knee replacement. Dr. Thrush, however, noted that Mr. Ripple had significant pre-existing left knee problems which contributed to his total knee replacement. He apportioned 15% impairment to Mr. Ripple's pre-existing condition and 15% impairment to his compensable left knee injury. On August 9, 2013, the claims administrator granted Mr. Ripple a 15% permanent partial disability award based on Dr. Thrush's opinion. Alex Ambroz, M.D., also evaluated Mr. Ripple. Based on Dr. Thrush's calculations, he found that Mr. Ripple had 30% whole person impairment under the American Medical Association's *Guides*. However, he did not believe Dr. Thrush's apportionment was justified. Dr. Ambroz mistakenly believed that the 1% impairment rating found by Dr. Zimet related to Mr. Ripple's pre-existing left knee problems, and he apportioned the remaining 29% whole person impairment rating to Mr. Ripple's compensable left knee injury. On September 3, 2014, the Office of Judges affirmed the claims administrator's decision. The Board of Review affirmed the Order of the Office of Judges on January 28, 2015, leading Mr. Ripple to appeal.

The Office of Judges concluded that the 15% permanent partial disability award was appropriate. The Office of Judges based its determination on the evaluation of Dr. Thrush. It found that Dr. Thrush's recommendation was supported by the medical evidence of Mr. Ripple's

pre-existing left knee degeneration. The Office of Judges also considered the evaluation of Dr. Ambroz but it found that he mistakenly apportioned 1% impairment to Mr. Ripple's pre-existing surgery even though it was apparent that Dr. Zimet's impairment recommendation related to the compensable injury of this claim. The Office of Judges ultimately disregarded Dr. Ambroz's opinion because it found that he did not give proper consideration to Mr. Ripple's pre-existing conditions and his 2007 surgery. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

We agree with the conclusions of the Board of Review and the findings of the Office of Judges. Mr. Ripple has not demonstrated that he is entitled to any more than a 15% permanent partial disability award related to his compensable left knee injury. The evaluation of Dr. Thrush shows that Mr. Ripple has 30% impairment of the left knee, but Dr. Thrush apportioned 15% to his compensable injury. The evidence in the record shows that Mr. Ripple had significant left knee problems which eventually required him to undergo an arthroscopic repair of his lateral meniscus. The impairment rating and apportionment in Dr. Thrush's report is consistent with this evidence and the directives of the American Medical Association's *Guides*. The Office of Judges was within its discretion in relying on his report. It was also within its discretion in disregarding Dr. Ambroz's report because he did not take sufficient account of Mr. Ripple's pre-existing left knee problems.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:   November 4, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II